## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELMORE NICHOLS, Jr.,

      Petitioner,               CIVIL NO. 2:18-CV-10885
                                     HONORABLE PAUL D. BORMAN
v.                             UNITED STATES DISTRICT JUDGE

JOHN DAVIDS,

      Respondent,

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS; (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Elmore Nichols, Jr., ("Petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree home invasion, Mich. Comp. Laws § 750.110a(2); and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the following reasons, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arose from a break-in at the complainant's Lincoln Park home. The intruder assaulted the complainant, but ran out of the home when the complainant screamed. Officers responded to the area of complainant's house and saw a man matching the description of the intruder running down the street. The officers pursued the man and arrested him. The complainant later identified defendant as the intruder. The prosecutor charged defendant with first-degree home invasion with intent to commit third-degree criminal sexual conduct therein, MCL 750.110a, and with assault with intent to commit sexual penetration, MCL 750.520g.

*People v. Nichols*, No. 316432, 2014 WL 4854440, at * 1 (Mich. Ct. App. Sept. 30,

2014). Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den.* 498 Mich. 852,

865 N.W.2d 11 (2015).

Petitioner filed a post-conviction Motion for Relief from Judgment with the

trial court, raising what make up the second through ninth claims in his original

habeas petition.  The trial judge denied the motion. *People v. Nichols*, No. 12-

007351-01 (Wayne Cty. Cir. Ct., Mar. 29, 2016).  The Michigan Court of Appeals

denied Petitioner leave to appeal. *People v. Nichols*, No. 333395 (Mich.Ct.App.

Nov. 16, 2016).  Petitioner then filed an application for leave to appeal to the

Michigan Supreme Court, but that Court rejected his application under Mich. Ct. R.

7.305(C) because it was filed more than 56 days after the Michigan Court of Appeals

issued its decision. *See* Letter from the Clerk of the Court of the Michigan Supreme

Court, dated August 22, 2017. (ECF No. 11-19, PageID.1360).

2

Petitioner filed a motion to reissue judgment with the Michigan Court of Appeals, on the grounds that he did not timely receive a copy of their decision denying his post-conviction appeal on November 16, 2016. Petitioner claimed he was not informed of the Michigan Court of Appeals' decision until May 22, 2017. Petitioner asked that the order be reissued so that he could file a timely post-conviction appeal with the Michigan Supreme Court. (ECF No. 3-1, PageID.220–31). The motion to reissue judgment was denied on June 29, 2017. *See* Letter from the Chief Clerk of the Michigan Court of Appeals, dated June 29, 2017. (ECF No. 3-1, PageID.232). The Michigan Court of Appeals denied Petitioner's Motion for Reconsideration. *See* Letter from the Chief Clerk of the Michigan Court of Appeals, dated August 9, 2017. (ECF No. 3-1, PageID.243).

Petitioner then filed a motion for superintending control with the Michigan Supreme Court, asking the Michigan Supreme Court to order the Michigan Court of Appeals to reissue their judgment so that Petitioner could file a timely appeal. (ECF No. 3-1, PageID.247-73).

While the complaint for superintending control was pending, Petitioner filed his petition for writ of habeas corpus, raising nine claims for relief. (ECF No. 1). Respondent filed an answer on October 2, 2018. (ECF No. 10).

On October 26, 2018, the Michigan Supreme Court granted Petitioner's complaint for superintending control and ordered the Michigan Court of Appeals "to

docket the plaintiff's June 26, 2017 Motion to Reissue Judgment in Docket No. 333395 as a motion, and to issue an order deciding the motion." *Nichols v. Court of Appeals*, 503 Mich. 883, 918 N.W.2d 535 (2018).

This Court's predecessor, Judge Robert H. Cleland, granted Petitioner's motion to hold the case in abeyance so that Petitioner could properly exhaust his state court claims. *Nichols v. Nagy*, No. 18-10885, 2019 WL 316534 (E.D. Mich. Jan. 24, 2019).

Petitioner filed a motion for the Michigan Court of Appeals to reissue its November 16, 2016, order denying the application for leave to appeal from the denial of his Motion for Relief from Judgment, so that Petitioner could file a timely application for leave to appeal in the Michigan Supreme Court. The Michigan Court of Appeals granted the motion and reissued the order. *People v. Nichols,* No. 333395 (Mich.Ct.App. Oct. 31, 2018) (ECF No. 26-3, PageID.1850).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court. The Michigan Supreme Court vacated the trial court's denial of the Motion for Relief from Judgment, finding that, when ruling on the motion, the trial judge inadvertently reviewed Petitioner's direct appeal of his other Wayne County home-invasion conviction, rather than the conviction at issue in this case. The case was remanded back to the trial court for reconsideration of the Motion for Relief from Judgment. *People v. Nichols*, 503 Mich. 953, 923 N.W.2d 248 (2019).

On remand, the trial judge again denied the Motion for Relief from Judgment. The trial judge denied Petitioner's first three claims under *res judicata*, because the judge erroneously believed these were claims that Petitioner had raised on his direct appeal. The judge then denied claims four through seven on the merits and under Michigan Court Rule 6.508(D)(3). *People v. Nichols*, No. 12-007351-01-FC (Wayne Cty.Cir.Ct., Sept. 6, 2019) (ECF No. 26-1).

The Michigan Court of Appeals peremptorily vacated the trial judge's adjudication of the first three claims in the Motion for Relief from Judgment. The Court of Appeals determined that the trial judge again erred in denying those claims under *res judicata*, remanding for reconsideration of those claims. In all other respects, however, the Court of Appeals denied the application for leave to appeal. *People v. Nichols*, No. 351072 (Mich. Ct. App. Jan. 8, 2020) (ECF No. 26-5, PageID.2023). The Michigan Supreme Court denied Petitioner's application for leave to appeal because Petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Nichols*, 505 Mich. 1083, 943 N.W.2d 131 (2020).

On the subsequent remand, the trial judge issued a form order denying the motion for relief from judgment. *People v. Nichols*, No. 12-007351-01-FC (Wayne Cty.Cir.Ct., June 3, 2021)(ECF No. 26-2).  The Michigan appellate courts denied

Petitioner leave to appeal. *People v. Nichols*, No. 358005 (Mich.Ct.App. Sept. 29, 2021); *lv. den.* 509 Mich. 909, 974 N.W.2d 202 (2022).

Judge Cleland subsequently reopened the case and permitted Petitioner an extension of time to file an amended petition. (ECF No. 21). Petitioner filed an amended habeas petition. (ECF No. 22). Respondent filed an answer that supplanted the original answer filed and addressed the issues raised in both the original and amended habeas petitions. (ECF No. 25).

Petitioner, in his original and amended petitions, seeks relief on the following grounds. In the interests of judicial clarity, the Court will paraphrase the claims rather than recite them verbatim: (1) the trial judge erred in giving the jurors a verbal instruction regarding the criminal sexual conduct element of first-degree home invasion that differed from the written instruction, (2) the victim's identification of the Petitioner at the live line-up was infected by police influence and was based upon a newspaper photograph of the Petitioner rather than the victim's own perceptions; trial counsel was ineffective for failing to object to the in-court identification, (3) the evidence was insufficient to convict; trial counsel was ineffective for not challenging the sufficiency of evidence at trial; (4) the trial judge considered conduct that Petitioner had been acquitted of in imposing sentence; trial counsel was ineffective for failing to object; (5) trial counsel was ineffective for failing to seek preclusion of the introduction of the state's DNA evidence where the DNA evidence was

misleading, consisted of DNA mixtures from multiple sources, where there was no

determination as to a major contributor to the DNA mixture, or where the results of

the DNA testing was inconclusive, (6) trial counsel was ineffective for failing to

obtain an independent DNA expert, (7) trial counsel was ineffective for failing to

call exculpatory witnesses, (8) appellate counsel was ineffective, and (9) the trial

judge erred in denying some of Petitioner's post-conviction claims on the erroneous

belief that they were barred by *res judicata.*

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme

7

Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).   An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.   A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

## III. DISCUSSION

### A. Claim # 1. The jury instruction claim.

Petitioner first alleges that his due process rights were violated because the judge's verbal instruction concerning the criminal sexual conduct element for first-degree home invasion was different from the written instruction.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.   The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement

8

of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

Moreover, in determining whether to grant habeas relief to a petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61–62 (2008); *California v. Ray*, 519 U.S. 2, 5 (1996).

Mich. Comp. Laws § 750.110a(2) states that:

> A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all the elements of the burglary of a dwelling, but also requires that the defendant be armed with a

dangerous weapon and/or that the dwelling be occupied. *See Johnson v. Warren*, 344

F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (citing *United States v. Garcia-Serrano*,

107 F. App'x. 495, 496–97 (6th Cir. 2004)).

The factual basis for Petitioner's claim was laid out by the Michigan Court of

Appeals:

> During the jury instruction conference at the close of trial, the trial court
> informed counsel that the instruction on the home invasion charge
> would reference intent to commit criminal sexual conduct (CSC), but
> would not reference a degree of CSC. Both counsel agreed to this
> approach. The trial court prepared written instructions for the jurors,
> including the home invasion instruction. Regarding the CSC element of
> the home invasion charge, the written instruction stated: "Third, that
> when the defendant broke and entered the dwelling, he intended to
> commit criminal sexual conduct."
>
> Before giving the jury the final instructions, the trial court told the
> jurors to read along in their written instructions while the court verbally
> instructed them. When the court came to the home invasion charge, the
> court misstated the instruction, as follows: "third, the People have to
> establish that when the defendant broke and entered the building, he
> intended to commit criminal sexual conduct *involving penetration*"
> (emphasis added). At the time, no one questioned the discrepancy
> between the verbal instruction and the written instruction.
>
> However, during deliberations, the jury sent a question to the court: "Is
> it possible to find guilty on count one (home invasion) but not guilty on
> count two (assault with intent to commit criminal sexual conduct
> involving penetration)? The third element on count one states 'intended
> to commit criminal sexual conduct' but does not say 'involving
> penetration.'" The trial court discussed the question with counsel, and
> defense counsel stated that the jury should be advised that third degree
> criminal sexual conduct requires proof of penetration. After further
> discussion, the trial court called in the jury, reread their question aloud,

10

and told them, "that's exactly what your instruction that you took in says. Also, I think if you look at your verdict forms, they say you may mark one box on each of those on each of the sheets that you got. On each sheet you can mark a box."

The jury deliberated for approximately forty more minutes, and then sent another question to the court: "What is the definition of criminal sexual conduct?" Approximately thirty-five minutes later, before the court had convened to answer the jury's question, the jury informed the court that it had reached a verdict. The jury found defendant guilty on the charge of first-degree home invasion, and not guilty on the charge of assault with attempt to commit sexual penetration.

*People v. Nichols*, 2014 WL 4854440, at *1. The Michigan Court of Appeals

rejected Petitioner's claim:

The trial court's written instruction correctly described the statutory element of intent to commit a felony, specifically, CSC. When the jury asked for clarification regarding the CSC element of the home invasion charge, the trial court's answer indicated that the jury should refer to their written instructions. The written instruction was sufficient to inform the jury that the prosecutor had the burden of proving that defendant intended to commit a criminal sexual assault when he broke into the complainant's home.

Defendant argues that reversal is required, and asserts that the trial court several times referenced sexual penetration as an element of the home invasion charge. The record contradicts defendant's argument. The court correctly described the element in the preliminary instruction given to the jurors, as follows: "Third, that when the defendant broke and entered the dwelling, he intended to commit criminal sexual conduct." Before and during voir dire, the trial court twice referenced "criminal sexual conduct third degree" regarding the home invasion charge, but did not reference penetration. Viewed as a whole, the jury instructions adequately informed the jurors of the prosecutor's burden of proof, and the jury's request for clarification resolved any confusion that might have arisen from the discrepancy between the verbal

11

instructions and the written instructions. Accordingly, the discrepancy between the verbal instruction and the written instruction does not warrant reversal of defendant's conviction.

*People v. Nichols*, 2014 WL 4854440 at * 2.

"Jury instructions in a criminal case must be evaluated in the context of the overall charge." *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir. 1986). Although the written instruction contradicted the oral instruction concerning the CSC element for first-degree home invasion, when viewing the instructions as a whole, Petitioner's constitutional rights were not violated. *Id.* The correct instruction concerning the elements for first-degree home invasion was written, rather than oral, and correctly explained the requisite elements for the offense. *Id.* In fact, several times during the trial, the judge informed the jury that the prosecutor was required to prove that Petitioner intended to commit criminal sexual conduct when he broke into the victim's house, not that he intended to commit sexual penetration. The written instructions correctly stated this element of first-degree home invasion. In response to the jury's question, the judge referred them back to the written instruction. In light of the foregoing, Petitioner is not entitled to habeas relief.

In any event, any error by the judge in orally instructing the jurors that they had to find that Petitioner intended to commit sexual penetration when he broke into the victim's home, rather than simply engage in some form of criminal sexual conduct, would not entitle Petitioner to habeas relief because the error was

advantageous to Petitioner in that it increased the burden of proof for the prosecutor. "When the putative error in a criminal jury instruction is such that it tends to narrow the indictment or to elevate the government's burden of proof, the defendant cannot be heard to complain about prejudice." *United States v. Deppe*, 509 F.3d 54, 59 (1st Cir. 2007); *See also Roland v. Mintzes*, 554 F. Supp. 881, 889 (E.D. Mich. 1983) (Any error by state trial judge in instructing jurors that they had to find that the petitioner acted with premeditation and deliberation to find him guilty of first-degree felony-murder was not prejudicial to petitioner since the instructions increased the prosecution's burden of proof by suggesting that it had to prove that the murder was both premeditated and committed during a felony). Petitioner is not entitled to relief on his first claim.

## B. Claim # 2. The suggestive identification/ineffective assistance of counsel claim.

Petitioner next claims that the victim's identification of him was tainted by a suggestive identification procedure. In the alternative, Petitioner argues that trial counsel was ineffective for failing to object.

Respondent argues that Petitioner's suggestive identification claim is unexhausted because Petitioner only raised, in the state courts, a claim that trial counsel was ineffective for failing to object to the suggestive identification procedure, but did not raise an independent claim that the victim's identification of Petitioner was the result of a suggestive identification procedure. Respondent

13

further argues that the claim is now procedurally defaulted because Petitioner no longer has any state court remedy to exhaust his claim. Respondent makes this same argument for Petitioner's third and fourth claims.

Generally, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275-78 (1971). A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim in the state courts. *McMeans v. Brigano*, 228 F. 3d 674, 681 (6th Cir. 2000). The doctrine of exhaustion mandates that the same claim under the same theory be presented to the state courts before it can be raised in a federal habeas petition. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). "Even the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012).

Respondent is correct that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). Petitioner no longer has any available state court remedies with which to exhaust his underlying substantive claims, because under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction Motion for Relief from

14

Judgment. *See Gadomski v. Renico*, 258 F. App'x. 781, 783 (6th Cir. 2007). Petitioner has no remaining state court remedies with which to properly exhaust the underlying substantive claims found in claims two through four. Thus, the claims should be considered procedurally defaulted. *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995).

Procedural default, however, is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner's underlying substantive claims are related to his ineffective assistance of counsel claims. This Court will be required to analyze the merits of the underlying substantive claims to determine whether trial counsel was ineffective in failing to object. Accordingly, the Court will discuss the merits of the underlying substantive claims as well as the ineffective assistance of counsel claims.

Petitioner, in his second claim, alleges that the victim's out-of-court and in-court identifications were tainted by the fact that she saw a picture of Petitioner in a newspaper that was taken after his arrest and which identified him as the suspect.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147–48 (E.D. Mich. 1997) (citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Courts consider five factors in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199–200.

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as

16

there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner failed to show that the victim's in-court identification was the product of a suggestive pre-trial identification. Thus, there was no basis for its suppression. Indeed, "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012).

According to the victim, her friend Joseph Baffi was checking the paper for estate sales when the victim saw Petitioner's photograph. The victim saw the picture first; her friend did not point it out to her. The victim immediately recognized Petitioner as her assailant and pointed that out to Mr. Baffi. The victim testified that she was certain that Petitioner was her assailant even before she read the accompanying headline or article. (ECF No. 11-8, PageID.744–46).

As mentioned above, "only police-created impermissibly suggestive circumstances implicate due process concerns and thus require a reliability

17

assessment by the trial court." *Schroeder v. Premo*, 714 F. App'x. 666, 669 (9th Cir. 2017).  The police were not involved with having the victim view the newspaper story with Petitioner's photograph and information that he had been arrested, thus, the victim was not subjected to an improper suggestive pre-trial identification. *Id.* The victim's inadvertent viewing of Petitioner's photograph in the newspaper was not the result of a suggestive pre-trial identification procedure. *See United States v. Greenstein*, 322 F. App'x. 259, 263 (3rd Cir. 2009). The victim "recognized [petitioner] by coincidence, not as part of a formal identification procedure-nor one that was unnecessarily suggestive." *United States v. Greenstein*, 322 F. App'x. at 263–64.

Moreover, Petitioner failed to show that the subsequent live-lineup procedure was improper. The victim testified that no one told her who to identify, which position Petitioner was standing in, what he was wearing, or other details that would identify Petitioner as the suspect. (ECF No. 11-8, PageID.747-48). In fact, an independent defense attorney was present for the lineup and the parties stipulated at trial that the attorney's testimony would have been that the people in the lineup were sufficiently similar with respect to their physical attributes, since no photograph was taken of the venire. (ECF No. 11-9, PageID.876–77). The fact that the lineup attorney would have testified at trial that he believed that the lineup was fair, further supports a finding that the lineup was not unduly suggestive. *See Gullick v. Perrin,*

669 F.2d 1, 5 (1st Cir. 1981); *see also Hampton v. Ludwick*, No. 2:09-12842, 2010 WL 4683909, at *6 (E.D. Mich. Nov. 10, 2010).

Finally, assuming the pre-trial identification was suggestive, the victim had an independent basis for her in-court identification of Petitioner as her assailant. The victim testified that the assault occurred in close proximity (approximately 12 feet when Petitioner first entered the house), that the assault lasted approximately two minutes, and that she got at least glimpses of Petitioner's face. (ECF No. 11-8, PageID.732, 740, 752). More importantly, the victim gave a description of the assailant to police and was certain of her identification in court. (ECF No. 11-8 PageID.213; ECF No. 11-9, PageID.785).

The victim testified that she was in close proximity to Petitioner during the assault and was able to get a glimpse of his face. The victim never identified anyone else as being her assailant. These factors all support a finding that an independent basis existed for the victim's in-court identification of Petitioner. *See Robertson v. Abramajtys*, 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).

In addition, with respect to the victim's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard*, 405 F.3d 459, 473 (6th Cir. 2005); *See also United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention where the

witness spoke with the robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of attention where robber confronted witnesses with a gun). Because the victim was being sexually assaulted in her own home, it was not unreasonable for the state courts to conclude that she paid a high degree of attention to her assailant.

Moreover, even if there were slight discrepancies between the victim's initial description of her assailant and Petitioner's appearance, as Petitioner alleges, this is insufficient to render the in-court identification suspect, because the victim was able to get a good look at Petitioner and testified that she was certain in her identification of Petitioner as her assailant. *See United States v. Hill*, 967 F.2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness's description of robber, where witness's view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification).

Finally, the reliability of the victim's in-court identification is supported by the fact that she "testified without equivocation" that Petitioner was her assailant. *Howard*, 405 F.3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted,

20

permitting the identification was a constitutional error because it created a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson*, 144 F. Supp. 2d at 848.

Police spotted and arrested Petitioner in the vicinity of the victim's home minutes after the assault. (ECF No. 11-8, PageID.680-85; 702-07). Petitioner matched the description of the suspect and his clothing and items in his car were consistent with those reported by the victim. (ECF No. 11-8, PageID.682, 709–13, 716). Moreover, the DNA evidence could not exclude Petitioner and the victim from the gloves in Petitioner's car—the same gloves he wore when he assaulted the victim. (ECF No. 11-9, PageID.860–66).

Given the above evidence against Petitioner, any error in admission of the victim's allegedly unreliable identification testimony was harmless error at best. *See Solomon v. Curtis*, 21 F. App'x. 360, 363 (6th Cir. 2001). Petitioner is not entitled to relief on his suggestive identification claim.

The Court also rejects Petitioner's related ineffective assistance of counsel claim.

A defendant must satisfy a two-prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v.*

21

*Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).[1]

Although counsel did not move to suppress the victim's identifications of Petitioner, she did cross-examine the victim extensively about some of the problems with her identification of Petitioner, such as the limited time that the assault took place, the fact that the victim was in fear from being assaulted, and discrepancies in the victim's description of the suspect that differed from Petitioner's appearance.

---

[1] To avoid repetition, the Court will not repeat the *Strickland* standard when addressing each of Petitioner's individual ineffective assistance of counsel claims.

(ECF No. 11-8, PageID.754–59, ECF No. 11-9, PageID.769–78, 785–87).  Even if counsel had not objected to the in-court identification of Petitioner, the decision to attack the credibility of the victim's identification of Petitioner through cross-examination was a reasonable trial strategy that defeats Petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo*, 100 F. App'x. 332, 333–34 (6th Cir. 2004).

More importantly, Petitioner failed to show that the identification procedure employed with the victim was unduly suggestive and has thus failed to show that his lawyer was ineffective for failing to move for suppression of the victim's pre-trial identification. *See Perkins v. McKee*, 411 F. App'x. 822, 833 (6th Cir. 2011). Furthermore, since the victim's identification of Petitioner was independently reliable for the reasons mentioned above, Petitioner was not prejudiced, as required to establish ineffective assistance, by trial counsel's failure to make a pretrial motion to suppress the victim's in-court and out-of-court identifications on the basis that the pre-trial identification procedures were suggestive. *See Howard v. Bouchard*, 405 F.3d at 481–85.  Finally, because of the additional evidence against the Petitioner in this case, counsel was not ineffective in failing to make a pre-trial motion to suppress the victim's identification of the Petitioner. *See Riley v. Jones*, 476 F. Supp. 2d 696, 710 (E.D. Mich. 2007). Petitioner is not entitled to relief on his second claim.

**C. Claim # 3. The sufficiency of evidence/ineffective assistance of counsel claim.**

Petitioner next contends that there was insufficient evidence to establish his identity as the perpetrator.  Alternatively, Petitioner argues that trial counsel was ineffective for failing to challenge the sufficiency of the evidence.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United*

24

*States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence

does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

The victim positively identified Petitioner at trial as her assailant. The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F. 2d 1142, 1144 (6th Cir. 1985) (internal citations omitted). The victim's unequivocal identification of Petitioner at trial as her attacker was sufficient to support Petitioner's conviction. *See Thomas v. Perry,* 553 F. App'x. 485, 487–88 (6th Cir. 2014). Although Petitioner attacks the quality of the eyewitness identification, he is

basically asking this Court to re-weigh the testimony and credibility of the evidence, which this Court cannot do. *See United States v. Campbell*, 18 F. App'x. 355, 358 (6th Cir. 2001) (quoting *United States v. Tipton*, 11 F.3d 602, 609 (6th Cir. 1993)). This portion of Petitioner's insufficiency of evidence claim rests on an allegation of the victim's credibility, which is the province of the jury.  *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).

In addition to the positive eyewitness identifications, there was circumstantial evidence to establish Petitioner's identity as the victim's assailant.  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Police spotted and arrested Petitioner in the vicinity of the victim's home minutes after the assault and at a time when few persons were out on the street. This is circumstantial evidence that supports a finding that Petitioner was the person who had recently broken into the victim's house. *See Burger v. Prelesnik*, 826 F. Supp. 2d 997, 1016 (E.D. Mich. 2011).  Petitioner matched the description of the suspect and his clothing, and the items discovered in his car were consistent with those reported by the victim.   This is further circumstantial evidence establishing Petitioner's identity as the perpetrator. *See e.g.*, *United States v. Eastman*, 645 F. App'x. 476, 481 (6th Cir. 2016).  Finally, the DNA evidence could not exclude Petitioner and the victim from the gloves found in Petitioner's car, the identical

gloves worn by the victim's assailant.  Evidence that the glove contained a mixture of DNA, of which Petitioner could not be excluded as one of the contributors, was sufficient, along with the other evidence, to support the jury's guilty verdict. *See United States v. Kittrell*, 269 F. App'x. 338, 342 (4th Cir. 2008).

Sufficient evidence supported the verdict.  Counsel's failure to move for a directed verdict did not amount to ineffective assistance of counsel. *Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986); *see also Hurley v. United States*, 10 F. App'x. 257, 261 (6th Cir. 2001).  Petitioner is not entitled to relief on his third claim.

### C. Claim # 4. The sentencing/ineffective assistance of counsel claim.

Petitioner next contends that the judge improperly considered conduct that Petitioner had been acquitted of when she sentenced Petitioner to the high end of the sentencing guidelines range of 87-290 months. Specifically, Petitioner notes that the judge referred to him as a "serial rapist" at sentencing and used this to justify sentencing Petitioner at the top end of the guidelines range.

A sentencing court may properly consider conduct of which a defendant has been acquitted, so long as the conduct has been proven by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. White*, 551 F.3d 381, 383-84 (6th Cir. 2008); *Erdman v. Tessmer*, 69 F. Supp. 2d 955, 963 (E.D. Mich. 1999).  Although Petitioner was acquitted of the charge of assault with intent to commit criminal sexual penetration, the victim's

28

testimony established by a preponderance of the evidence that Petitioner intended to sexually assault the victim.  Petitioner put his hands on the victim as she wrestled with him to get away. During the struggle, the victim said Petitioner "was pulling on his pants." (ECF No. 11-8, PageID.736–37). Petitioner was able to get them "down near his knees," until the victim screamed, scaring Petitioner off. (ECF No. 11-8, PageID.738–39). When the victim ran to her husband's room, she said "somebody was in this house and tried to rape me." (ECF No. 11-8, PageID.740).  Attempted rape is also what the victim reported to police after the assault. (ECF No. 11-8, PageID.681). Thus, it was more likely than not that Petitioner intended some kind of sexual act as he assaulted the victim. Indeed, the home invasion for which Petitioner was convicted in this case specified that he entered the home "with the intent to commit criminal sexual conduct." *See People v. Nichols*, 2014 WL 4854440, at *1.

In any event, the judge did not use acquitted charges in this or other cases when sentencing Petitioner. Although the judge observed that she acquitted Petitioner of criminal sexual conduct in a prior case, the judge did not base her sentence on that case. Instead, the judge based her sentence on the guidelines in this case and the fact that Petitioners had been convicted of criminal-sexual-conduct charges in Alabama and served 30 years of imprisonment for those charges before returning to Michigan to commit the instant offense, along with

at least one other offense in Wayne County. That is also the reason the judge called Petitioner a "serial rapist"—because his criminal record demonstrated that he was. (ECF No. 11-12, PageID.968–69). Petitioner is not entitled to relief on his sentencing claim.

The Court also rejects Petitioner's related ineffective assistance of counsel claim.

A defendant has the right to the effective assistance of counsel at sentencing in both noncapital and capital cases. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Id.* (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

Petitioner failed to show that the judge's sentence was based on any improper considerations. Accordingly, Petitioner failed to show that counsel was ineffective for failing to object. Petitioner is not entitled to relief on his fourth claim.

**D. Claims # 5-8. The procedurally defaulted claims/the ineffective assistance of appellate counsel claim.**

Respondent argues that Petitioner's fifth through seventh claims are procedurally defaulted because Petitioner raised these claims for the first time on

post-conviction review and failed to show cause and prejudice, as required by
M.C.R. 6.508(D)(3), for not raising the claims on his direct appeal.

When the state courts clearly and expressly rely on a valid state procedural
bar, federal habeas review is also barred unless petitioner can demonstrate "cause"
for the default and actual prejudice because of the alleged constitutional violation,
or can demonstrate that failure to consider the claim will result in a "fundamental
miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991).  If
petitioner fails to show cause for his procedural default, it is unnecessary for the
court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).
However, in an extraordinary case, where a constitutional error has probably resulted
in the conviction of one who is actually innocent, a federal court may consider the
constitutional claims presented even in the absence of a showing of cause for
procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to
be credible, such a claim of innocence requires a petitioner to support the allegations
of constitutional error with new reliable evidence that was not presented at trial.
*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "'[A]ctual innocence' means factual
innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614,
624 (1998).

The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Nichols*, 505 Mich. at 1083. Although the Michigan Court of Appeals remanded the matter to the trial court to address the claims that the judge had erroneously denied on the basis of *res judicata*, the Court of Appeals denied the application for leave to appeal regarding what make up Petitioner's fifth through seventh claims "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Nichols,* No. 351072 (Mich. Ct. App. Jan. 8, 2020). (ECF No. 26-5, PageID.2023). These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals.  Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

The Wayne County Circuit Court judge, in rejecting Petitioner's fifth through seventh claims, indicated that Petitioner was not entitled to relief on his claims because he failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3),

for failing to raise the issues on his direct appeal. *People v. Nichols,* No. 12-007351-01-FC, *9–10 (Wayne Cty.Cir.Ct., Sept. 6, 2019) (ECF No. 26-1, PageID.1845-46). Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), Petitioner's fifth through seventh claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007). Petitioner's fifth through seventh claims are procedurally defaulted.[2]

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

---

[2] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291. However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim,but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

34

Petitioner failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Petitioner raised for the first time in his post-conviction Motion for Relief from Judgment. Appellate counsel filed a sixteen-page appellate brief which raised the jury instruction claim that Petitioner himself raises as the first claim in his petition.[3] Petitioner has not shown that appellate counsel's strategy in presenting this claim and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by Petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a

---

[3] *See* Defendant-Appellant's Brief on Appeal (ECF No. 11-13, PageID.987–1007).

constitutional violation probably resulted in the conviction of one who is actually innocent. Petitioner's sufficiency of evidence claim (Claim # 3) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Finally, assuming that Petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by the Assistant Michigan Attorney General in the answer to the petition for writ of habeas corpus, and the Wayne County Circuit Court judge in the opinion and order denying the post-conviction motion, Petitioner failed to show that his procedurally defaulted claims have any merit. In particular, the reasons justifying the denial of Petitioner's procedurally defaulted claims were "ably articulated by the" Wayne County Circuit Court judge in rejecting these claims, thus, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g.*, *Bason v. Yukins*, 328 F. App'x. 323, 324 (6th Cir. 2009).

**E. Claim # 9. The post-conviction claim.**

Petitioner lastly claims he is entitled to habeas relief because the trial judge erroneously invoked the doctrine of *res judicata* to initially reject several of Petitioner's post-conviction claims.

Petitioner's claim that the Michigan courts wrongfully denied him post-conviction relief is non-cognizable. This Court notes that "[t]he Sixth Circuit consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001). The reason for this is that states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).

The Court denies the petition for writ of habeas corpus. The Court also denies Petitioner a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims

on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should be issued, and an appeal of the district court's order may be taken, if the petitioner shows that reasonable jurists would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). Petitioner is denied leave to appeal *in forma pauperis* because the appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: October 20, 2023